## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JENNIFER HOWRY,         )
                                         )
           Plaintiff,       )
v.                                )        Case No. CIV-15-423-RAW-SPS
                                         )
NANCY A. BERRYHILL,     )
**Acting Commissioner of the Social**  )
**Security Administration,**[1]       )
                                       )
          Defendant.    )

## REPORT AND RECOMMENDATION

The claimant Jennifer Howry requests review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 10, 1970, and was forty-three years old at the time of the administrative hearing (Tr. 38). She completed twelfth grade, and has worked as a phlebotomist and an automobile production inspector (Tr. 26, 165). The claimant alleges inability to work since December 23, 2009 due to right foot problems, three herniated discs in her back, and migraines (Tr. 164).

## Procedural History

On February 15, 2012 the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Bernard Porter held an administrative hearing and determined that the claimant was not disabled in a decision dated May 24, 2012 (Tr. 18-28). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but stated that she could lift/carry ten pounds occasionally and five pounds frequently, sit for six hours in an eight-hour workday, and

*walk for six hours* in an eight-hour workday. Furthermore, the ALJ found that the claimant was able to occasionally use foot controls for the right lower extremity, kneel, climb ramps or stairs; frequently balance, stoop, and crouch; but never crawl, climb ladders, ropes, or scaffolds, work around unprotected heights or moving mechanical parts, or work in environments with temperature extremes. The ALJ also found the claimant needed a sit/stand option to change position every thirty minutes, that she was limited to simple tasks and simple work-related decisions and occasional interaction with coworkers, supervisors, and the public, and that she required the flexibility to be off task 5% of the day and miss one day of work each month (Tr. 22). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, clerical mailer, touch up screener, and optical goods assembler (Tr. 26-27).

### Review

The claimant contends that the ALJ erred by: (i) failing to find that her impairments met a listing, (ii) failing to properly assess her RFC, and (iii) making inadequate step five findings. As part of the alleged RFC errors, the claimant alleges errors related to credibility, a consultative examiner's opinion, and failure to account for her foot impairment. The undersigned Magistrate Judge finds that the ALJ did fail to properly evaluate the claimant's RFC, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of major depression, anxiety disorder, lumbar disc disease, migraine headaches, hypertension,

restless leg syndrome, and degenerative joint disease of the right foot and ankle (Tr. 20). The relevant medical evidence reveals that the claimant had a repair of a stress fracture in her right foot in 2000, with subsequent hardware removal in 2001. The patient was also treated for migraine headaches (Tr. 290). A 2007 MRI of the lumbar spine revealed multilevel degenerative findings, most significant at L4-L5 and L5-S1 (Tr. 767). In 2008, she reported increased pain in her right foot, and an MRI revealed a cyst at the base of the fourth metatarsal, and extension of fluid (Tr. 272). On September 23, 2009, the claimant underwent an excisional resection of an interosseous ganglion cyst, right foot, with an autogenous bone graft harvest, right heel (Tr. 295). Two months later, following a hardware failure, she underwent a graft repair, hardware removal and replacement, and delayed primary closure of wound (Tr. 302, 410).

In January 2010, the claimant had swelling of her right leg, and the Foot and Ankle Health Center noted a wound rupture. She was instructed to maintain a wound VAC and wear a compressive ACE dressing, and advised that her work schedule (including a recent seven-day work week) was affecting her ability to heal (Tr. 428). Two months later, she was assessed with cellulitis of the right foot (Tr. 436). In May 2010, she was advised to continue with bone stimulation and avoid smoking, and advised to maintain a sedentary lifestyle due to the pain in her right foot. Her podiatrist, Dr. Cloninger, noted that he was "unsure at this point as of rate of healing or the fusion site will ever heal" (Tr. 440). A July 13, 2010 x-ray of the right foot revealed moderate dorsal soft tissue swelling without acute fracture, fixated fourth metatarsal base fracture, hallux valgus, mild degenerative joint disease first interphalangeal joint, and calcaneal

enthesophyte (Tr. 461). A July 22, 2010 x-ray of the right foot revealed soft tissue swelling, nonunited fixated fracture of the proximal fourth metatarsal, and heel spur (Tr. 488, 683). This was described as a chronic, nonhealing wound at the lateral aspect of the right foot, along with tenderness upon palpation of the dorsal aspect of the foot (Tr. 514-515).

In 2011, the claimant continued to report right foot pain, and her diagnoses included malunion of fracture (Tr. 633-635). In 2012, treatment notes reflect she was affected by a right leg limp and pain with range of motion in right ankle flexion, extension, inversion, eversion, and internal rotation (Tr. 690, 751-762).

On April 3, 2012, Dr. Theresa Horton conducted a mental status examination of the claimant and assessed her with major depressive disorder, recurrent, moderate, as well as anxiety disorder, not otherwise specified (Tr. 713). Dr. Horton noted the claimant appeared capable of understanding, remembering, and managing simple and complex instructions and tasks, but that she might have difficulty sustaining activity and persisting on task due to distractibility related to chronic pain issues, noting her "serious health complaints" would be addressed by other physicians' reports (Tr. 713).

On April 7, 2012, Dr. Traci Carney conducted a physical examination of the claimant. On the day of the examination, she ambulated with one crutch, and did appear to have difficulty putting pressure on her right foot. Additionally, her heel to toe walking was weak secondary to pain in her right hip (Tr. 718). Dr. Carney assessed her with right foot pain with a history of multiple cyst removals, history of hardware implementation still present, low back pain with history of disc disease, chronic migraine cephalgia,

anxiety, depression, chronic opioid usage, tobacco abuse, and elevated blood pressure at the time of the exam (Tr. 718).

State reviewing physicians determined that she could perform the full range of sedentary work (Tr. 739-740).

At the administrative hearing, the claimant testified, as relevant, that she had a number of surgeries on her right foot, that she ended up wearing a wound VAC for about four months, and that she had also contracted a staph infection (Tr. 43-45). She believed the primary reasons she could not work were her foot and her back (Tr. 46). She further testified that she had migraine headaches at least every two weeks, was hospitalized once with a migraine, and gets shots to treat them but does not have insurance for daily medication (Tr. 48). As to her foot, she testified that she has swelling, pain, and constant aching every day, and that pain medications do not remove these but make them tolerable (Tr. 49-50). She stated that she could stand, on her left foot, for five to ten minutes, and can walk about twenty-five yards, but that her back and foot do not allow much more (Tr. 51).

In his written opinion, the ALJ summarized the claimant's hearing testimony, and much of the medical evidence. At step four, the ALJ reviewed the evidence and restated the claimant's severe impairments. Specifically, the ALJ summarized the evidence related to the claimant's right foot injury, and gave great weight to the opinions of the state reviewing physicians and Dr. Carney (Tr. 25). He further used boilerplate language to find the claimant not credible, and rejected a Third Party Function Report by the claimant's father-in-law because he could not be considered disinterested and the ALJ

concluded that his statements must be "colored by affection" and therefore not credible (Tr. 25-26).

The claimant argues that the ALJ erred in failing to properly assess her RFC, including account for right foot impairment, migraines, and Dr. Carney's consultative examination. The undersigned Magistrate Judge agrees. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ failed to actually connect the evidence he recited to the RFC, particularly with regard to how the RFC accounts for the claimant's right foot impairment for which she used a crutch and alleged she needed to elevate her foot, nor did he explain how it accounted for the claimant's migraines. "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7. "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts

and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013). *See also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted].

As part of her argument regarding the ALJ's RFC error, the claimant also asserts that the ALJ erred in weighing her subjective statements regarding intensity, persistence, and pace. Since the ALJ's opinion was issued, the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The claimant asserts that even though it was issued after the ALJ's decision, remand is required because the Tenth Circuit has held that, "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). Although this is true, remand is only appropriate "if the policy would actually affect the case." *Wellenstein v. Colvin*, 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (*comparing Sloan* with *Van Vickle v. Astrue*, 539 F.3d 825, 829 n.3 (8th Cir. 2008). Here, it is apparent from the ALJ's opinion that he failed to conduct any sort of analysis

under either standard, and therefore the decision should be reversed and remanded for consideration of the evidence and testimony in light of the new policy.

Accordingly, the decision of the Commissioner should be reversed and the case remanded for further analysis of the claimant's RFC. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**